IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00634-REB-BNB

CHARLES BLANDIN,

Petitioner,

v.

CHARLES DANIEL, Warden

Respondent.

## RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Doc. # 1] (the "Application") by Charles Blandin ("Petitioner"). I respectfully RECOMMEND that the Application be DENIED.

Petitioner is proceeding *pro se,* and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must allege "sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

Petitioner currently is incarcerated by the Bureau of Prisons ("BOP") at the United States Penitentiary in Florence, Colorado. He is serving a thirty-three month sentence for Possession of a Firearm by a Prohibited person in violation of 18 U.S.C. § 922(g). Petitioner's projected release date is February 27, 2012, via good time conduct release. His home detention eligibility date is November 20, 2011.

Petitioner asks that he promptly be considered for placement in a halfway house[1] pursuant to the Second Chance Act of 2007, 18 U.S.C. §§ 3621 and 3624, rather than pursuant to 28 C.F.R. §§ 570.20 and 570.21, and be placed in a halfway house in accordance with BOP Program Statement ("PS") 7310.04,[2] which allows for a placement up to six months and greater than ten percent of a prisoner's sentence.

Section 3624 provides in pertinent part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Prior to the 2007 amendments, section 3624(c) limited the time for inmate eligibility for transfer to a halfway house to the lesser of ten percent of his sentence or the final six months of his sentence. 18 U.S.C. § 3624(c) (2000).

Placement in a halfway house must be conducted in a manner consistent with 18 U.S.C. § 3621(b). 18 U.S.C. § 3624(c)(6)(A). Section 3621(b) governs the transfer of inmates to other facilities, including halfway houses:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

---

[1] Halfway houses also are called community correction centers ("CCCs") and residential re-entry centers ("RRCs").

[2] Although Petitioner refers to PS 7310.01 as the program statement that provides for up to a six-month placement in a CCC or RRC without a ten percent of sentence restriction, PS 7310.04 is the program statement that addresses RRC and CCC placement.

2

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Placement in a halfway house must also be "determined on an individual basis" and be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. §§ 3624(c)(6)(B) and (C).

After the enactment of the Second Chance Act of 2007, the BOP issued two interpretive memoranda (the "Memoranda") "providing guidance to its staff regarding the proper implementation of the amended statutes while BOP was undergoing formal rulemaking to revise more permanently its regulations." Garza v. Davis, 596 F.3d 1198, 1202 (10th Cir. 2010). The Tenth Circuit Court of Appeals has described the Memoranda as follows:

> The first memorandum, issued on April 14, 2008, addressed the statutory changes following the Second Chance Act of 2007, emphasizing that the pre-release time frame for RRC and CCC had been increased to twelve months and that there was no percentage limitation on time to be served. Additionally, the memorandum instructed staff that they must make prerelease placement decisions "on an individual basis in every inmate's case" and that "the Bureau's categorical time frame limitations on pre-release community confinement . . . are no longer applicable, and must no longer be followed." Staff were instructed to review inmates for pre-release placements at an earlier time, e.g., seventeen to nineteen months before their projected release dates, and to consider pre-release inmates on an individual basis using the five factors from 18 U.S.C. § 3621(b). However, the memorandum also stated that "[w]hile the Act makes inmates eligible for a

3

> maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less" and that "[s]hould staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager."
>
> The second BOP memorandum, issued on November 14, 2008, addressed inmate requests for transfer to RRCs when more than twelve months remained from their projected release date (that is, non-prerelease inmates). In relevant part, the memorandum instructed staff that they could not automatically deny a non-pre-release inmate's request for pre-release transfer, but must give each request individualized consideration. However, if an inmate were to request transfer prior to the pre-release time frame of twelve months, although staff must individually consider the request, they were instructed that there was "no need" to perform immediately the statutorily prescribed individualized review. Rather, the inmate should be informed that the request would be fully reviewed in conjunction with the next scheduled Program Review. Staff were cautioned that they should not inform the inmate that he or she was ineligible for transfer because "[t]elling an inmate that he/she is ineligible for RRC placement is the same as automatically denying the inmate from even being considered for such placement, and is not in accord with Bureau Policy." The second memorandum also stated that "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs."

Id. at 1202-03 (internal citations omitted); Response to Application for Writ of Habeas Corpus [Doc. # 11] (the "Response"), Ex. A, Attachs. 2 and 3.

On May 4, 2011, Petitioner was reviewed for RRC placement. The Unit Team staff determined that a recommendation of 180 days of pre-release halfway house placement was of sufficient duration to assist Petitioner with his transition back into the community, Response, Ex. A, ¶ 8 and Attach. 5, and Petitioner was notified of the decision. Id. at Attach. 5.

Petitioner's request for halfway house placement was individually reviewed applying the five factors listed in 18 U.S.C. § 3621(b). Response, Ex. A at Attach. 5. The Unit Team staff considered the resources of the facility contemplated, including resources related to job search,

4

transportation, clothing assistance, drivers license, housing search, drug/alcohol aftercare, medical resources, education programs, and mental health aftercare programs.  Id.

Staff further considered the nature and circumstances of Petitioner's offense, noting his conviction for possession of a firearm.  Id.  Staff also considered the history and characteristics of Petitioner and noted that the $100 felony assessment due to be paid under the Financial Responsibility Program had expired; his work performance was "satisfactory-good"; he was participating in the Release Preparation Program; he had taken a drug education class; and his relevant prior criminal record included burglary and escape.  Id.  There were no statements by the sentencing court to consider, but the staff did consider that Petitioner was sentenced to thirty-three months, which is within the sentencing guideline range of 27-33 months.  Id.

Finally, staff found that Petitioner had family support, life skills, residence, financial resources, and general job skills.  Id.  The review form states that "[b]ased on careful consideration of the information provided above, the Unit Team will recommend placement which is sufficient duration to provide the greatest likelihood of successful reintegration into the community-Residential Reentry Center (RRC) for 180 days. . . ."  Id.  Furthermore, Petitioner received a 180-day placement in a RRC, which is almost twenty percent of the sentence he was directed to serve.

I find that the Unit Team's determination that Petitioner be placed in an RRC for 180 days was not contrary to the mandate set forth in the Second Chance Act of 2007, was consistent with 18 U.S.C. §§ 3621 and 3624 and  BOP PS 7310.04, and was not an abuse of discretion by BOP staff.

I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated September 6, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge